## Mowatt *vs.* Carow and others.

Where the testator died previous to the ad ption of the revised statutes, and by his will, which was made some time before his death, devised his estate to his wife for life, and directed his executors to sell the same after her death and to convert it into money for the purposes of distribution, and then gave one fourth of the proceeds to his son if then living, but in case of his death before that time, the testator directed that his share should be equally divided amongst the children of such son, the survivors or survivor of them ; and the son died in the life time of the testator leaving three chil. dren, *one of whom died in the lifetime of the testator leaving a child; Held,* that the *two surviving children of the son were entitled to the whole of that share of* the estate, to the exclusion of the child of their deceased brother. And it seems the result would have been the same in this case if the testator had died after the adoption of the revised statutes.

Where an interest in property is given to a person, with a limitation over of the same interest to his children, or others upon his death before the time appointed for such interest to vest in possession, the death of the first devi- see or legatee, in the lifetime of the testator, does not produce a lapse of the limitation over to the substituted objects of the testator's bounty.

As a general rule in the construction of wills, the testator must be presumed to have used words in their ordinary or primary sense unless it appears from the context that he probably used them in some other sense ; or unless by reference to extrinsic circumstances, the use of the words in their primary sense would render the provisions of the will insensible or in- operative.

The word children in its ordinary sense does not include grandchildren. But it may include them where it appears there were no persons who would answer to the description of children in the primary sense of the term, or where there could not be any such at the time or in the event contemplat- ed by the testator ; or where the testator has clearly shown by the use of other words that he used the term children as synonymous with issue or de- scendants.

In a limitation to the survivors of a clars of devisees or legatees, where any of the class are in esse at the death of the testator *so as to be capable of* taking a vested interest, the surv'.vorship is usually construed with reference to that time ; so as to give the representatives of such of the class as die after the testator, the right to a share of the devise or bequest to the class.

Where a devise or legacy or residuary bequest is given to two or more per- sons by name as tenants in common, or to be devided among them equal- ly, and without any words indicating an intention of the testator to give the same over to the survivors, the shares of such as die in the lifetime of the testator will become lapsed ; or will go to their children or descendants under the provisions of the revised statutes.

Where the construction of a will has been correctly settled by the decree of the court below, the appellant who fails in reversing such decree is person- ally chargeable with the costs of the appeal, except in very special cases.

1838.

Mowatt
v.
Carow.

December 18.

THIS was an appeal from a decree of the vice chancellor of the first circuit dismissing the complainant's bill ; the object of which bill was to obtain a share of the estate of John Mowatt the elder, the complainant's great-grandfather. John Mowatt the elder made his will in August, 1816, he being then at the advanced age of seventy-six. And he continued to live till March, 1829, when he died, without having revoked or altered his will. The testator had three children, Alexander, John and Elizabeth ; the first of whom was dead at the time of making the will, but had left two children, Elias and Jane, who were then living and in their infancy. John Mowatt, jun. the son of the testator was married at the date of the will, and had then three children living ; John E. the father of the complainant, Charles and James. Elizabeth was also married, to the defendant I. Carow, and was then the mother of a large family of children. The testator by his will devised to his widow the income of all his estate both real and personal for life. And after her death he directed his executors to sell and convert the whole into money for the purpose of distribution according to the directions of his will. He then, after m king provision for the widow of his deceased son in case she should survive his own widow the tenant for life, directed the remainder of his estate to be divided into four equal parts and disposed of the same as follows : " *First.* I give and bequeath unto my son John Mowatt, jun. one equal fourth part thereof; but in case he dies before my wife, I then give this his said share to be divided equally amongst *his children, the survivors or survivor of them,* share and share alike. *Secondly.* I give and bequeath to my daughter Elizabeth Carow one equal fourth part thereof; but in case she dies before my wife I then give this her share to be equally divided amongst her children, the survivors or survivor of them, share and share alike. *Thirdly.* I give and bequeath to my grand-daughter Jane Mowatt one equal fourth part thereof; but in case she dies before my wife, and leaving lawful issue, then my will is that this her said share shall be given to her said issue, to be divided amongst them, the survivors or survivor of them, share and

share a like.   But should my said grand-daughter die before my wife, leaving no lawful issue, then my will is that her said share shall be considered as appertaining to my estate and subject to the division thereof.   *Fourthly.*  I give and bequeath to my grandson Elias Mowatt one equal fourth part thereof; but in case he dies before my wife, and leaving lawful issue, then my will is that this his share shall be given to his said issue to be equally divided amongst them, the survivors or the survivor of them, share and share alike. But should my said grandson die before my wife, leaving no lawful issue, then my will is that his said share shall be considered as appertaining to my estate, and *subject to the division thereof according to this my will.*"   John Mowatt, jun. the son of the testator died in 1821, leaving, his three children surviving him.   His son John E. Mowatt married in 1824, and died about two months before the testator, leaving the complainant and another child, since dead, him surviving.   Elias Mowatt the testator's grandson, to whom or to whose issue one fourth of the property was devised after the death of the widow, also died in the lifetime of the testator without issue and unmarried.   And in January, 1835, the testator's widow died ; leaving Mrs. Carow, Jane the grand-daughter, Charles and James, two of the sons of John Mowatt, jun. and the complainant their nephew, her surviving.   The complainant insisted that the legacy to Elias Mowatt the grandson lapsed, by his death in the lifetime of the testator, and that he was entitled to one ninth part thereof as one of the heirs at law of his great grandfather; and that he was entitled also to share in the estate given to John Mowatt, jun. or his children, as the only son and representative of one of those children ; or that the share of John Mowatt lapsed by his death in the lifetime of the testator, and that the complainant had a right to share therein as an heir of the testator entitled to a portion thereof under the statutes of descents and distributions.   Mrs. Carow and her husband, and Jane the grand-daughter of the testator, admitted that they believed the legal rights of the complainant were as claimed by him, and submitted the question to the decision of the court.   But James Mowatt, and the assignee

of Charles Mowatt, who were alone interested in opposing the complainant's claim, insisted by their answers that the whole of the share of J. Mowatt, jun. belonged to his two children who survived the testator; and that the share of Elias the grandson was not lapsed, but was by the provisions of the will given over to those who were entitled to the other three fourths of the estate, in the same proportions. The vice chancellor sustained this last construction of the will; and held that the share which was to go to John Mowatt, jun. or his children, did not lapse by his death in the lifetime of his father.

The following opinion was delivered upon pronouncing the decree appealed from.

McCoun, V. C. In behalf of the infant complainant, the bill claims for him an equal third of the fourth part of the estate directed to be divided among the children of John Mowatt, jun. as representing John E. Mowatt one of such children. This proceeds upon the ground that the devise over has taken effect; but his counsel have nevertheless suggested, and made it a point upon the argument, that the event has not happened upon which the devise over was to take effect, that the devise has therefore lapsed, and consequently the complainant comes in as one of the lineal descendants and heirs at law of the testator for a share of this part of the estate. And so with respect to the one fourth which was intended for Elias Mowatt the grandson, it is contended and the bill claims for this infant a ninth part thereof as an heir at law and next of kin, upon the ground of a lapse and no effectual gift over of this quarter of the estate or other disposition of it by the will.

The first question then to be considered is, whether the event has happened upon which the gift or limitation over to the children of John Mowatt, jun. was to take effect? He died before the testator's wife; so far it is within the words of the will; but he likewise died before the testator, and as to him therefore, it was clearly a lapsed devise, no interest ever vested in him, the devise in that respect failed.

It became void by his death; and it is said that this is not the event intended to be guarded against, for the testator contemplated his son surviving him and becoming vested in interest and then dying before the property vested in possession and in that event only he intended the children to take. This may have been the event contemplated, but the same reason that would induce a further disposition of the property in that case would induce a testator to guard against a lapse by the death of the devisee in his own lifetime; and it is a rule of law well settled that where a devise or bequest is to one, with a limitation over to another if the first should die under twenty-one or before the happening of any other event, and he dies under the prescribed age or before such other event happen, though in the lifetime of the testator, yet the devisee or legatee over is entitled. (1 *P. Wms.* 274. 3 *Id.* 113. 1 *Powell on Dev.* 202. *Will. on Ex'rs.* 764.) The case of *Williams* v. *Jones*, (1 *Russ.* 517,) has been cited to the contrary, but it will be found to contain nothing at variance with this rule. It merely decides that the gift over cannot take effect except upon the happening of the event on which it is limited. In the present case, the event has occurred, and the gift over to the children of John Mowatt, jun. is therefore just as effectual as if he had outlived the testator.

The next question is, who are entitled under this form of gift? "Children" as here used is a word of purchase. It comprises a class of persons, and all who answer the description, either at the death of the testator when the will takes effect, or at the time appointed for the distribution, are entitled to take. Whichever period is adopted in this case would make no difference in the result; for at the death of the testator in March, 1829, and also at the death of his wife in January, 1835, there were but two children of John Mowatt, jun. living, Charles and James; and as they exactly answer the description and compose the class designated, it would seem to follow very conclusively that they alone are the persons to take. (*Will. on Ex'rs*, 717, 720.). Sometimes, it is true, grandchildren and issue or descendants generally are permitted to take under an enlarged construc-

tion of the term "children." Where for instance the will would otherwise remain inoperative and it is necessary to extend the meaning beyond the natural import of the word in order to effectuate the object and apparent intention of the testator, as in *Wilde's case*, ( 6 *Coke's Rep.* 16,) or where the testator has clearly shewn by other words, such as issue or descendants, used promiscuously with the term children, that he did not intend the latter to be understood merely in its natural sense but in the more comprehensive sense of issue or descendants generally. Such are the cases of *Wythe* v. *Thurlston*, and *Gale* v. *Bennett*, (2 *Blunt's Amb.* 555, *n.* 2 ; *Id.* 681.) Here there is no necessity for extending the word in order to give effect to this part of the will, nor is there a promiscuous or indiscriminate use of the words children and issue. On the contrary, these words are used in separate parts of the will and with an apparent discrimination. No inference therefore can be drawn from this circumstance to bring the case within the principle of those last cited. Indeed, it would seem as if the testator had purposely limited the gift to children, and expressly excluded grandchildren from participating in the devise over of the shares intended for his son John and his daughter Mrs. Carow, by designating children, &c. "the survivors and survivor of them" as the persons to take. Even without the latter words and without something more than appears in this case, the general rule must be applied, that where there are children who properly answer the description, grandchildren cannot be permitted to share along with them. (3 *Ves. & Beames*, 69. 1 *Roper on Leg.* 72, 73. *Will. on Ex'rs*, 723. 1 *Edw. Ch. R.* 186.) I am therefore against the complainant upon this part of the case.

The next question is upon the devise to the grandson Elias Mowatt—whether it has entirely lapsed, so as to produce an intestacy as to this one-fourth of the estate, and to let the complainant in for one-ninth of it as an heir at law ? He died before the testator, and this is sufficient to produce a lapse ; but the event of his dying in the lifetime of the widow and without issue has also happened, and as before shewn, it is no objection to a gift over taking effect, if a valid

one has been made, that the event upon which it was made to depend occurred in the testator's lifetime. There is here such a gift over. The words are, " my will is that his said share shall be considered as appertaining to my estate and subject to the division thereof according to this my will." " Appertaining to my estate," without more, would leave it undisposed of ; but " subject to the division thereof according to this my will," is a clear indication that the testator meant to dispose of it. The only difficulty is as to the division— the will having directed a division into four parts, which is the division here spoken of, and yet there are only three persons or the representatives of three persons to take. It was obviously, I think, the intention of the testator to make the division with so many parts only as there might be persons remaining to take, although he omitted to express it. Being satisfied that this was his design, it is the duty of the court to carry it into effect. We may depart from the literal and technical sense of words, when they would lead to inconsistent and absurd conclusions, and adopt those which render the will rational and consistent, and comport with the ascertained intention of the testator as collected from the whole instrument, and not founded upon mere conjecture. (6 *Mad. Rep.* 346.) I am therefore of opinion that the will may be read as if the testator had given over this share to be divided equally between his son, his daughter and his grand-daughter, and upon the same limitations as their original shares of the estate. Consequently, there is no intestacy as to Elias' share ; and the complainant not being provided for by the will in any event, his bill must be dismissed. He may be excused, however, from the payment of costs. His claim did not appear to be entirely groundless. Some of the defendants, particularly Mr. Carow, express a belief in their answers that the complainant is entitled to participate in the division of the estate. This was enough to justify the filing of the bill. The parties must therefore bear their own costs of the suit.

*J. Anthon & I. Scott*, for the appellant. The devises to John Mowatt, jun. and to Elizabeth Carow and to their

" children," and to Elias Mowatt and Jane Mowatt and their
" issue," were intended by the testator to convey precisely the
same rights, and therefore the word issue must be substituted
for the word children to produce this effect. (5 *Binn.* 501.
*Roper on Eq.* 61. 5 *Munf.* 440. 1 *Dess.* 324, 331, 497.
4 *D. & E.* 707.) The term survivor has relation to the death
of the testator, and therefore under the devise over on the
death of John Mowatt, jun. " to his children and the sur-
vivors or survivor of them," the children of John Mowatt,
jun. living at the testator's death and the issue of de-
ceased children will take. (*Adm'rs of Taylor* v. *Am-
bler,* 4 *Hen. & Munf.* 411.) The will thus interpreted
gives to the complainant his father's share by representa-
tion, viz. the one-third part of the one-fourth bequeathed to
the grandfather, John Mowatt, jun. and to his issue in the
event of his death, &c. John Mowatt, jun. having died in
the lifetime of the testator, that legacy lapsed, and the com-
plainant is entitled to a share under the statute of distribu-
tions as representing his father. (*Williams* v. *Jones,* 1 *Russ.*
517. 1 *Roper on Eq.* 408. 3 *Russ.* 340. 1 *Chit. Eq. Dig.*
*tit. Legacies,* 632, 634. 4 *Ves.* 437.) Elias Mowatt having
died in the lifetime of the testator, the legacy of one-fourth
bequeathed to him also lapsed, and as to this share the tes-
tator also died intestate, and the complainant is entitled to
his father's share thereof. The bill prays general relief as
well as special, so that the complainant may have a decree
according to his rights.

*D. Selden & E. Paine,* for J. Mowatt and for Paine the
assignee of Charles Mowatt. Charles Mowatt and James
Mowatt, being the only children of John Mowatt, jun. who
were alive at the death of John Mowatt, the testator, and Jane
Mowatt, his widow, claim the same interest in the estate of the
testator that John Mowatt, jun. would have been entitled to
had he survived both these parties. John Edgar Mowatt, the
father of the complainant, took nothing under the testator's
will, because the testator survived him ; of course no interest
ever vested in J. E. Mowatt, the father, with reference to
any event, and the complainant takes nothing as the repre-

1838.

Mowatt
v.
Carow.

sentative of his father. (2 *Vern.* 107. 10 *Ves.* 200. 1 *Roper on Eq.* 323, 329. *Maybank* v. *Brooke*, 1 *Bro. C. C.* 372.) For the same reason, John Mowatt, jun. the complainant's grandfather, took no interest under the will. The complainant being a grandchild of John Mowatt, jun. cannot take under the description of children. (2 *Atk.* 221. 1 *Roper on Eq.* 60. 1 *Ves. sen.* 196. 3 *Ves.* 258. *Ambl.* 806. 10 *John.* 12. 11 *Id.* 340. 9 *Id.* 450. 4 *Id.* 64.) There is no lapsing of the legacy to John E. Mowatt, and the bill proceeds on no such ground. (1 *P. Wms.* 96. *Roper on Eq.* 266. 2 *Ves. jun.* 265. 2 *i oper on Eq.* 276. 2 *Ves. jun.* 634. 1 *Jac. & Walk.* 146. 4 *Madd.* 11. 2 *Coxe*, 189.)

THE CHANCELLOR. There can be very little doubt in this case, what was the general intention of the testator, as apparent from the will itself. The testator drew his own will, as appears by an endorsement thereon in his hand writing; from which endorsement it also appears that the will was written by him the year before its execution. And if no events had occurred but those which probably were in the contemplation of the testator at that time, I presume this controversy would never have arisen. One of his sons was already dead, having left two children then in their infancy; and as the testator contemplated the possibility that one or both of them might die without issue, after the date of his will and before the time appointed for the division of his estate at the death of his widow, he made an appropriate provision to guard against a lapse of those shares by the death of the legatees in his lifetime; and also to secure the share to the other members of his own family, if either of the legatees should have died and should have left no issue living at the death of their grandmother. The vice chancellor, therefore, is unquestionably right in supposing that the share of Elias, the grandson, did not become lapsed, except as to his own presumptive right to the same, by his death during the life of the testator. For however much it may have been once doubted, it is now clearly settled that where an interest in property is given by will to one person, with a limitation over of the same interest either to his children or to any

other persons upon the death of the first devisee or legatee before the time appointed for such interest to vest in possession, the death of the first devisee or legatee, although in the lifetime of the testator, does not produce a lapse of the limitation over of that interest to the substituted objects of the testator's bounty.

One of the earliest cases on this subject is that of *Ledsome* v. *Hickman*, (2 *Vern*. 611,) where the testator devised £300 to each of his three daughters at twenty-one or marriage; and if any of them died before that time her share to go to the survivor. One of the daughters having died in the lifetime of the testator, the question arose whether the legacy was lapsed or should go to her two surviving sisters. Lord Chancellor Cowper decided that the limitation over was good as an executory devise. Although the reporter adds a *sed quære tamen* to the report of that case, it was followed by the same chancellor, eight years afterwards, in the case of *Bird* v. *Lockey*, (2 *Vern*. 744,) and by Lord King in the subsequent case of *Willing* v. *Baine*, (2 *P. Wms*. 113) It was probably urged in those cases, as in this, that there could be no legacy unless the legatee survived the testator; and that the legacy intended by the testator being lapsed, there was nothing to go over to the substituted legatees. The short answer to that, however, is that the bequest to the substituted legatees in such a case is an original legacy to them at the death of the testator; the event having then happened upon which their substitution in the place of the first named legatee depended. And this is so whether such legacy to the substituted legatee is then vested, or is contingent and depending upon some future event. The principle that the legacy to the substituted legatees does not lapse by the death in the lifetime of the testator of the legatee in whose place they are substituted by the will, is also fully recognized in several recent decisions in the court of chancery in England. (*Humphreys* v. *Howes*, 1 *Russ. & Myl*. 639. *Gittings* v. *McDermott*, 2 *Myl. & Keen*, 69. *Le June* v. *Le June*, 1 *Lond. Jurist*, *p*. 235. *Archer* v. *Jegon*, 1 *C. P. Cooper's Rep*. 172.)

In the case of *Williams* v. *Jones*, (1 *Russ. Rep*. 517,)

relied on by the appellant's counsel upon the argument, the event upon which the substitution was to take place never happened. The legacy was given absolutely to T. W. if he should be living at the time of the decease of the testator's wife; and if he was not, then it was to go to the son of T. W. But as the legatee actually survived the wife, although he died before the testator, the substituted legatee could not take according to the provisions of the will. Neither could he take as the legal representative of his father, as to whom the legacy was lapsed by death in the lifetime of the testator. The same difficulty occurred in sustaining the substituted legacy in *Humberstone* v. *Stanton*; (1 *Ves, & Beame*, 485,) which depended on the event of the first legatee dying before he completed his apprenticeship; and he lived till after his apprenticeship was completed, but died before the testator. In the present case the event upon which the share of Elias Mowatt was to go over to the owners of the other three shares as the substituted legatees, actually happened, by his death without issue during the life of his grandmother. And if the legatees or substituted legatees of the other three-fourths of the estate are entitled to those other shares as such legatees, they are entitled to the share originally intended for Elias, in the same proportions, as the substituted legatees of that share; although he died in the lifetime of the testator.

For the same reason there can be no doubt as to the right of Charles and James to take two-thirds at least of the share which their father would have taken in the estate if he had survived both the testator and the widow. For the contingency has happened upon which the children of John Mowatt, jun. were to be substituted in his place as legatees; to wit, his death during the life of his mother. It remains therefore for me to inquire and decide whether the other third of that share is devised to the complainant, in the events which have occurred, as one of the substituted legatees; or whether Charles and James are entitled to it as survivors of their brother; or whether it lapsed by the death of John E. Mowatt, as the substituted legatee of this third of that share, after the death of his father and in the lifetime of the testator.

I can see no way in which the complainant can entitle himself to this third, as a substituted legatee ui der the will, unless he can bring himself within the description of one of the *surviving children* of John Mowatt, jun. in the sense in which the testator intended to use the word children in this part of his will. As a general rule the testator must be presumed to have used words in their ordinary or primary sense, unless it appears from the context of the will that he probably used them in some other sense; or unless, by reference to extrinsic circumstances, the use of the words in their primary sense would render the provision of the will insensible or inoperative. (*Wigram on Wills*, 29.) The word children in common parlance does not include grandchildren, or any others than the immediate descendants in the first degree of the person named as the ancestor. But it may include them where it appears there were no persons in existence who would answer to the description of children in the primary sense of the word at the time of making the will; or where there could not be any such at the time or in the event contemplated by the testator; or where the testator has clearly shown, by the use of other words, that he used the word children as synonymous with descendants, or issue, or to designate or include illegitimate offspring, grandchildren or stepchildren. (*Radcliff* v. *Buckley*, 10 *Ves.* 195. *Earl of Orford* v. *Churchill*, 3 *Ves. & Beame*, 69.) Testing the devise or bequest in this will, to John Mowatt, jun., or to his *children* if he died in the lifetime of the testator's wife, by these rules, I can see nothing to authorize me to presume that he meant to include offspring of his son John in any more remote degree, or to use the word children as synonymous with issue. The event which has occurred was probably not provided for by the testator because it was not contemplated by him as one that might happen during his life; although it now appears the event was not impossible. The testator was then 76 years of age, and his wife was probably very far advanced in life; and the three sons of his son John were then very young and unmarried. It was therefore very improbable that his own term of life would be prolonged until his grandchildren should be mar-

1838.

Mowatt
v.
Carow.

ried and have issue, and that both the son and grandson would also die before him. For this reason he only made provision for the substitution of the children of John, as the legatees in the place of their father in the event of his dying before the time appointed for the distribution of the estate, with the right of survivorship among themselves if either of those children should die before the testator. The survivorship, where any of a class of legatees are then in esse, is construed with reference to the death of the testator, when the legacy becomes vested in interest in the children then living, but subject to open and let in after born children ; so as to give the representatives of the children dying after that time the right to an undivided share of the legacy. (*Drayton* v. *Drayton*, 1 *Desaus. Rep.* 324. *Woodstock* v. *Shillits*, 6 *Sim. Rep.* 415.) But as the event which has actually happened in this case was not foreseen by the testator, and therefore was not provided for by his will, this court cannot give the appellant a share of the legacy, under the description of a child of John Mowatt, jun. without making a will for the testator which he did not make for himself. (*Dod* v. *Brabant*, 4 *Dunf. & East*, 709.)

Where a legacy or devise or residuary bequest is given to two or more persons by name, as tenants in common, or in severalty, or to be divided among them share and share alike, and without any words indicating an intention of the testator to give the same over to the survivors, the shares of such persons respectively will become lapsed by the death of the legatee or devisee in the lifetime of the testator. (*Page* v. *Page*, 2 *Stra.* 820. *Bagwell* v. *Dry*, 1 *P. Wms.* 700. *Ackroyd* v. *Smithson*, 1 *Bro. Ch. Rep.* 503.) The share of John Mowatt, jun. would therefore have become lapsed if he and all his children had died in the lifetime of the testator ; as there was no provision in the will which could have carried it to his more remote descendants, or to his sister Mrs. Carow, or to his brother's children, as substituted legatees. The revised statutes now contain a provision for saving the legacy or bequest to the descendants of the legatee who dies in the lifetime of the testator, if such legatee is himself a child or descendant of such testator.

(2 *R. S.* 66, § 52.) But even that provision, if it had been in force at the testator's death, would not reach the present case, as he had himself substituted other persons who were to take the whole legacy *by survivorship* in case his son died in the lifetime of the testator's wife.

If the three children of J. Mowatt, jun. had been substituted by name to take the share of their father in equal proportions in severalty in case of his death, and without any words of survivorship, the share of John E. as one of the substituted legatees would have become lapsed by his death during the lifetime of the testator upon the principle which I have before stated. And in a case of that kind I presume the provision of the revised statutes above referred to would give that share of the fund to the descendants of the substituted legatee who died in the lifetime of the testator, his ancestor. But previous to the revised statutes it would have gone to the heirs or next of kin of the testator himself, as a part of his estate not effectually disposed of by the will. In the case of *Viner* v. *Francis*, (2 *Cox's Ca.* 190,) Lord Alvanley as master of the rolls decided that where a legacy was given to a class of persons in general terms, as in this case to the children of John Mowatt, jun., the share of one of the class who was in existence at the date of the will and who died in the lifetime of the testator did not lapse; but that the whole fund, although bequeathed in terms indicating a tenancy in common rather than a joint tenancy among the individuals of the class, went to the residue of the class who survived the testator, or who afterwards came into existence previous to the time appointed by the testator for the distribution of the fund. Such a construction of a will, where there was no clause of survivorship and no substitution of the issue of such of the class as happened to die before the testator, would defeat this beneficial provision of the revised statutes in many cases; as such wills are very common. I am therefore happy to find that I cannot sustain the claim of the two children of John Mowatt, jun. who were living at the testator's death, to the whole of their father's share, upon the principle that the *jus accrescendi* is necessarily implied where the legacy is given to a class,

although in words not importing a joint tenancy.  The contrary was decided by Lord Thurlow in the case of *Martin* v. *Wilson*, (3 *Bro. C. C.* 324) a year or two after the case of *Viner* v. *Francis*, which of course overruled the decision of the master of the rolls ; although some subsequent writers and annotators in England still think the decision of Lord Alvanley is more in accordance with the doctrine of the courts in analagous cases.  (*See* 1 *Roper on Leg.* 333.  2 *Bro. C. C.* 404, *note.*)  I will not say Lord Alvanley's construction might not be proper, for the purpose of effectuating the probable intention of the testator, where one of the class dies in the testator's lifetime without issue.  That intention, however, is usually indicated by words of survivorship which have reference to the death of the testator, and which have the effect to prevent the lapse of the share of one of the class who dies before the testator.  (*Lord Bindon* v. *The Earl of Suffolk,* 1 *P. Wms.* 96.)  It would hardly be reasonable, therefore, to adopt it where its effect would be to give the whole fund to the survivors of the class, to the entire exclusion of the descendants of the one who died after the making of the will.  That being an event evidently not contemplated by the testator in his will in such a case, unless there is something to indicate that intent, it is better that the lapsed share should go to the heir at law or next of kin of the testator ; or that it should be left to go, as it now will under the provisions of the revised statutes, to the descendants of the individual for whom it was originally intended, if he is a descendant of the testator.

In the present case, however, the testator has made use of language which, according to the settled rules of construction, was sufficient to carry the whole share of John Mowatt, jun. to such of the children or substituted legatees as survived the testator.  In *Smith* v. *Pybus,* (9 *Ves.* 567,) the testatrix bequeathed a legacy to her mother for life, and after the termination of that life interest therein she directed it to be divided equally between three *personæ designatæ,* or the survivor of them, in the order in which they were mentioned in the will.  The sister who was first named in the will died in the lifetime of the testatrix, leaving the

other two sisters surviving. In that case it was adjudged that the words, " in the order they are now mentioned," as used by the testatrix, were not susceptible of any definite meaning ; and that the word survivor carried the whole legacy over to the sisters who survived the testatrix, in equal proportions, to the exclusion of the personal representative of the sister who was dead. Here it is evident the testator did not intend to die intestate as to any part of his estate ; as he directs it to be sold and converted into money for the purpose of distribution according to his will. And when he directs the share of John Mowatt, jun., in the event which has happened, to be divided equally among his children, *the survivors or survivor* of them, it must be presumed that he contemplated the possibility of the death of some of the children, and did not intend there should be a lapse in that event. No effect therefore can be given to these words in the will, according to the settled rules of construction, except by holding that the two children who survived the testator took the whole share originally intended for their father, including the one third of the original share of their cousin Elias.(*a*)

The decree of the vice chancellor was therefore right ; and must be affirmed, with costs to be paid by the next friend of the appellant. As there was probable cause for litigating the question in the court below, it was a proper case to excuse the complainant from the payment of costs, and to charge the costs of the defence upon the fund in the hands of the executors belonging to all of the defendants. But after the several questions arising upon the construction of a will have been fairly decided against the appellant by a competent tribunal, he ought not, except under very special circumstances, to be excused from the payment of costs upon his failure in the appellate court ; and to be allowed to throw the costs of the adverse parties upon a fund belonging exclusively to themselves. Such an exercise of the discretion of the appellate court, in ordinary cases, would have a tendency to promote appeals and to protract litigation unnessarily.

---

(*a*) See *Chaffers* v. *Abel*, 3 *Lond. Jurist*, 577.