Dykman, J.
This is an appeal from the decree of the surrogate of Kings county, construing the last will and testament of Gilbert Potter, deceased, upon the judicial settlement of the accounts of the executors.
The testator died on the 18th of March, 1883, leaving a last will and testament, dated April 4, 1877, and a codicil thereto, dated July 8, 1881. The codicil requires no consideration upon this appeal.
When the will was made the testator had three children, Mary Elizabeth. Beard, Josephine Curtis and Gilbert Potter. Mrs. Beard then had two children, Josephine and Anna. Mrs. Curtis had no children, and never had any. The testator left surviving him his widow, Phoebe Potter, and his three children and two grandchildren named above.
He left a large estate, consisting of both real and personal property.
Mary Elizabeth Beard, the daughter of the testator, died September 22, 1884, leaving her two children surviving,
Mrs. Josephine Curtis died February 4, 1891, leaving no children. Phoebe Potter, the wife, died June 17, 1891. Gilbert Potter still lives.
The first and second clauses of the will give specific articles to the wife and son of the testator.
By the third clause of the will, the testator gave to the executors the real property on Bedford avenue and Morton street, in the city of Brooklyn, in trust to receive the rents and profits, and pay therefrom the expenses of the property, and pay the residue to *226 the wife of the testator during her natural life, with a power of sale in the lifetime of the wife with her consent. In the event of a sale, the proceeds to be invested, and the income therefrom paid to the widow during her natural life, and at her decease the fund was to fall into the residue, subject to the trust created in relation thereto.
The fourth clause of the will gave to the executors all the residue of the testator’s property, in trust, to sell and convey the same in their discretion, collect the proceeds, and pay the debts and funeral and testamentary expenses, and upon the further trust to invest out of the proceeds $120,000, and apply the income to the use of the wife during her natural life.
Also upon the further trust to divide the remainder of such residue into three equal parts, and set apart and designate one of such shares for the use of each of the three children of the testator, and apply the income arising from each of such parts to the use of the children for whom it was designated during his or her natural life, with a proviso in relation to the entry into business of the son of Gilbert, which is unimportant here. Upon the yet further trust, to divide the sum of $120,000 into three equal parts at the death of the wife, and set apart one of such parts to each of the three children, and apply the income arising from each of such parts to the use of the child for whom it was designated, during his or her natural life.
Upon the death of either of the children of the testator leaving issue, the executors were authorized and directed to pay to such issue equally the capital of the share held by them in trust for the use of the parent so dying. But if either of the children of the testator should die leaving no surviving issue, then the executors were directed to pay the capital of the share held for the one so dying to the surviving children of the testator equally.
Thus far we have given a summary of the provisions of the will primarily applicable to the disposition of the estate of the testator.
Mrs. Beard is dead, but she left two children, and they took their mother’s share under the clause of the will which says: “ Upon the death of either of my children leaving issue I authorize, empower and direct my executors and trustees to pay to such issue equally the capital of the share held by them in trust for the use of the parent so dying.”
It is equally plain that the one-third of the estate which was set apart for the use of the son, Gilbert, must be retained by the executors for his use during his natural life.
The question, therefore, left for solution is whether the executors are to pay over to the son, Gilbert, the share of the estate held by them for Mrs. Curtis, or whether that one-third is to be divided between him and Josephine 0. B. Canfield and Anna H. Beard, the two children of Mrs. Beard, deceased.
The answer to that question is to be deducted by the following clause in the will: “ If either of my said children shall die, and leave no issue surviving them, I direct my said executors to pay, divide and distribute the capital of the share held for the use of the one so dying, to and among my surviving children, equally.”
*227 If the word “ children ” is employed here in its primary sense, and is to be allowed its natural and ordinary significance, then the construction of this clause is simple, and its meaning and intention is plain. By the rule of construction in this state applicable here, the term children is to be deemed to signify offspring of the first degree of the ancestor, unless it appears there were no persons in existence who would answer the description of children in the primary sense of the word at the time of making the will, or that there might be none at the time or in the event contemplated by the testator, or where the testator has clearly shown by the use of the word, or in other portions of the will, that he employed the word children as synonymous with descendants or issue, or to designate another class of persons. Mowett v. Carrow, 7 Paige, 328; Palmer v. Horn, 84 N. Y., 516.
We have here a plain and unambiguous sentence constructed in language which suggests no intention to use any words in an alternative sense or to allow the term children a substitutional import.
The scheme of the will is easy of comprehension. It gives to the executors the real property in Bedford and Morton streets in trust for the use of the wife during her natural life ; upon her death it or its proceeds sink into the residue of the estate.
Out of the residue $120,000 was to be invested for the use of the wife, and that even was to be augmented by the proceeds of the residence property if it was sold. The remainder was to be divided into three parts or shares, one of which was to be set apart and designated for the use of each of the three children of the testator, and the income from each share was to be applied to the use of the child for whom it had been set apart, and who had been designated as its owner.
At the decease of the wife, the $120,000, with the proceeds of the sale of the residence property, was to be divided into three equal parts.
Thus was made a complete disposition of the property for the natural lives of all the beneficiaries under the will, and when the testator commenced the final disposition of his property, the first thing he did upon that subject was to give a direction to the executors upon the death of either of his children leaving issue to pay to such issue equally the capital of the share held by them in trust for the use of the parent so dying.
Then he made a provision that if either of his children died leaving any issue surviving, then his executors should divide and distribute the capital of the share so held for the use of the one so dying among the surviving children equally.
Events have now so transpired that the situation is thus : Mrs. Beard left children surviving her who take the third of the estate. At the time of the death of Mrs. Curtis the fund set apart for the use of the wife had not sunk into the residue, and, therefore, we may as well inquire here what fund the executors held in trust for Mrs. Curtis at that time. The answer to that inquiry depends upon the signification to be attached to the phrase, “ the capital of the share held for the use of the one so dying,” which is not *228 free from obscurity. It must be borne in mind that the entire estate was given to the executors in trust with the direction to make two divisions of the same in the first instance. In the first place, the residence property or its proceeds and $120,000 was to be set apart for the use of the wife during her natural life, and the residue was to be divided into three equal parts for the use of the three children during their natural lives. Then at a subsequent time, upon the death of the wife, the portion of the trust fund which had been 'set apart for her use was to be divided into three equal parts, one of. which was to lie set apart for the use of each of the three children, and the income arising from each was to be applied to the use of the children for whom it was designated.
The one-third share of the entire estate had been held for the ultimate use of each child, at all times subject to the prior trust for the benefit of the wife in a portion thereof.
If this construction be not adopted, then the testator made no disposition of the fund set apart for the use of the wife after her death. The portion of the estate set apart for the use of the wife is undisposed of, unless it is included in the part of the estate which the testator had in mind when he used the words, “ capital of the share held for the use of the one so dying.”
Our conclusion is, therefore, that those words refer to the one-third part of the entire estate. In a broad sense the executors at all times held all the estate for the use of the three children, one-third for each child. This construction prevents intestacy as to any portion of the fund, and that result should be accomplislipd whenever it can reasonably be done.
Ecturning again to the meaning of the word “children,” as used by the testator, we have stated the exceptions to the general rule that the word is to be understood in its primary sense of offspring in the first degree.
It is now to be remarked that this case falls within neither of those exceptions. There were persons in -existence who would answer the description of children in the primary sense of the word when the will was made, and there could be and was such when all the events contemplated by the testator transpired. There is nothing in the use of the word by the testator in any other portion of the will to indicate his intention to use it in any but its primary sense. Throughout the entire will the testator has manifested the intention to give his surviving children the ultimate use of his property, and whenever he has indicated his grandchildren he has designated them as issue of his children.
In the last clause of the first paragraph of. the will the testator provided that if two of his children die before him, the executors were to hold all the residue upon the same trust to apply the income to the use of such surviving children during life, and divide the principal among his or her lawful issue equally, thus manifesting an intention in a certain contingency to permit one-third, or one child, to receive all the income. But in no part of the will is there any indication of an intention to allow the issue of one child to take anything more than the share held for the use of their parent
*229 The will manifests a predominant intention of the testator to make liberal and equal provisions for his three children. The résidue of the egtate, after the property is set apart for the use of the wife, is divided into three parts, and a vested life estate is given to each child in one of the provisions. The same division is made of the $120,000 after the death of the widow. Then, if either of the children die without issue to take the parents’ share, the executors are to divide and pay the share for the use of the one so dying among the surviving children equally. We must assume that this language is employed with deliberation. It is precise and plain, and we are asked to decide that it should be construed to include grandchildren with the children in such division and distribution. We find no justification for any such interpretation. It is not so written, and there is no ground for any such inference. In the Matter of Robinson, 57 Hun, 395; 32 St. Eep., 720, we had this question presented to us under circumstances similar to this in this case, and we there reached the same conclusion, and gave our reasons at length therefor.
Without more elaboration we think the decree should be reversed, and the case remanded to the surrogate for disposition in accordance with this opinion, and the costs of the appeal to be paid out of the estate.
Barnard, P. J., and Pratt, J., concur.